UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LESAMUEL PALMER,

                Plaintiff,

vs.                           Case No.  2:10-cv-98-FtM-36SPC

SERGEANT GJERDE; C. GALLAGHER; J.
BRACY; DOCTOR HEMPHILL,

                Defendants.
_____

## OPINION AND ORDER

### I.

This matter comes before the Court upon review of Defendant Doctor Hemphill's Motion for Summary Judgment (Doc. #44, Mot. SJ) and supporting exhibits (Doc. #44-1, Exhs. A-D) consisting of copies of Plaintiff's medical records, affidavit of Defendant Hemphill, inmate movement/transfer history log, and case law, filed on June 1, 2010. Plaintiff filed a response (Doc. #51, Response) in opposition thereto and attached supporting exhibits (Doc. #51-1, Pl's Exhs. A-E) including his affidavit and medical records. This matter is ripe for review.

### II.

Plaintiff LeSamuel Palmer, a Florida prisoner who is proceeding *pro se*, initiated this action by filing a Civil Rights Complaint Form (Doc. #1, Complaint) pursuant to 42 U.S.C. § 1983 on February 12, 2010. Plaintiff sues correctional officers and a doctor employed at Charlotte Correctional Institution (hereinafter

"Charlotte Correctional"). Complaint at 1, 11.  In pertinent part, Plaintiff attributes liability on the correctional officers for failure to protect Plaintiff on October 12, 2009, when another inmate attacked Plaintiff during recreation at Charlotte Correctional.  *Id.* at 11-12.  According to the Complaint, immediately preceding the attack, Plaintiff's repeated requests to each of the Defendants went ignored.  In particular, Plaintiff alleges that he asked each Defendant to either move him away from the cage next to the inmate-attacker, or move the inmate-attacker to a different recreation cage.  *Id.* at 12-13.  Because Plaintiff's requests were ignored, the inmate-attacker had the opportunity to break the cage-like fence separating himself from Plaintiff, pull Plaintiff into his cage, and attack Plaintiff by punching him, kicking him, and trying to stab him with a homemade shank.  *Id.*

As a result of the attack, Plaintiff suffered a dislocated shoulder, which later required two different medical procedures, a laceration on his lip, other minor abrasions on his body, and the effects of chemical agents.  Plaintiff attributes liability on Defendant Doctor Hemphill for a delay in providing medical treatment, and for failing to provide adequate medical treatment, for his serious medical conditions.  *Id.* at 14.

Specifically, Plaintiff states that Doctor Hemphill saw him approximately 20 minutes after the attack, but he was not provided with "any type of treatment for [his] . . . dislocated arm."  *Id.*

Plaintiff states he was placed in a holding cell until 1:00 p.m. when he was transported to Charlotte Regional Medical Center.  *Id.* According to the Complaint, the hospital placed Plaintiff under anesthesia and re-located his arm.   Plaintiff submits that he returned to the jail around 4:30 p.m. and saw Doctor Hemphill, who wrote a pass for "front cuffs" for two weeks.  *Id.*  Plaintiff takes particular issue with Doctor Hemphill's refusal to provide Plaintiff with an arm sling while he waited for transport to the hospital, failure to provide him with "adequate" pain medication because of arm injury, and failure to provide stitches for, a "deep cut in Plaintiff's mouth," which resulted in Plaintiff's inability to "properly eat" for several days.  *Id.*

As relief, Plaintiff seeks declaratory relief, compensatory damages totaling $800,000, punitive damages totaling $300,000, and any other relief the Court deems appropriate.  *Id.* at 15.

## III.

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of fact and compels judgment as a matter of law." *Swisher International, Inc. v. Schafer*, 550 F.3d 1046, 1050 (11th Cir. 2008); Fed. R. Civ. P. 56(c).  An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the burden of

identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). The standard for creating a genuine dispute of fact requires courts to "make all *reasonable* inferences in favor of the party opposing summary judgment, *Chapman v. Al Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)(en banc) (emphasis added), not to make all *possible* inferences in the non-moving party's favor.  "A factual dispute alone is not sufficient to defeat a properly pled motion for summary judgment." *Teblum v. Eckerd Corp. of Fla., Inc.*, 2:03-cv-495-FTM-33DNF, 2006 WL 288932 *1 (M.D. Fla. Feb. 7, 2006). Instead, "[o]nly factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment." *Lofton v. Sec'y Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004).  The moving party bears the burden of demonstrating to the Court that based upon the record no genuine issues of material fact exist that should be decided at trial. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d at 1260(citing *Celotex*, 477 U.S. at 323).  Further, "allegations in affidavits must be based on personal knowledge, and not be based, even in part, 'upon information and belief.'"  *Pittman v. Tucker*, 213 Fed.

Appx. 867, 870 (11th Cir. 2007)(quoting *Pace v. Capobianco*, 283
F.3d 1275, 1278 (11th Cir. 2002)).

To avoid the entry of summary judgment, a party faced with a
properly supported summary judgment motion "bears the burden of
persuasion" and must come forward with extrinsic evidence, *i.e.*,
affidavits, depositions, answers to interrogatories, and/or
admissions, and "set forth specific facts showing that there is a
genuine issue for trial." *Beard v. Banks*, 548 U.S. 521, 529
(2006)(citations omitted); *Celotex*, 477 U.S. at 322; *Hilburn v.
Murata Elec. N. Am., Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999).
If there is a conflict in the evidence, the non-moving party's
evidence is to be believed and "all justifiable inferences" must be
drawn in favor of the non-moving party. *Beard*, 548 U.S. at 529
(citations omitted); *Shotz v. City of Plantation, Fl.*, 344 F.3d
1161, 1164 (11th Cir. 2003). The court, however, "must distinguish
between evidence of disputed facts and disputed matters of
professional judgment. In respect to the latter, [the court's]
inferences must accord deference to the views of prison
authorities." *Beard*, 548 U.S. at 530. "A court need not permit
a case to go to a jury, however, when the inferences that are drawn
from the evidence, and upon which the non-movant relies, are
'implausible.'" *Cuesta v. School Bd. of Miami-Dade County*, 285
F.3d 962, 970 (11th Cir. 2002) (citations omitted). Nor are
conclusory allegations based on subjective beliefs sufficient to

create a genuine issue of material fact. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). In the summary judgment context, however, the Court must construe *pro se* pleadings more liberally than those of a party represented by an attorney. *Loren v. Sasser*, 309 F.3d 1296, 1301 (11th Cir. 2002).

## IV. Findings of Fact and Conclusions of Law

### A.   Material Facts

On the morning of October 12, 2009, at 8:50 a.m., Plaintiff was attacked by an inmate while incarcerated at Charlotte Correctional. *See generally* Complaint; Mot. SJ at 1; Response at 2. At 9:30 a.m., the medical staff examined Plaintiff, and at 9:55 a.m., less than one hour after the attack concluded, Doctor Hemphill examined Plaintiff and determined that Plaintiff needed to be sent to the hospital, but did not provide Plaintiff with an arm sling. Mot. SJ at 2, 4; Response at 2, 4. At approximately 1:00 p.m., Plaintiff arrived at Charlotte Regional Medical Center where he was placed under anesthesia and his shoulder was put back into place. Around 4:30 p.m., Plaintiff returned to Charlotte Correctional and was examined by Hemphill, who determined no pain

medication was necessary because Plaintiff had previously been
issued a ninety-day supply of pain medication, Mot. SJ at 4,
Response at 6; and, the laceration in Plaintiff's mouth did not
require sutures.  Mot. SJ at 8; Response at 3.

Plaintiff disputes Hemphill's contentions that pain medication
and an arm sling while awaiting transport to the hospital was
unnecessary.  Plaintiff states that he remained in "serious pain"
for approximately "four hours" while awaiting transport to the
hospital.  Response at 4; Pl's Exh. A.  Plaintiff contends that the
pain medication Hemphill had previously prescribed did not work,
and Hemphill ignored Plaintiff's complaints and refused to change
the pain medication prescription.  Response at 6.  Plaintiff
further submits that he never asked Hemphill for a front-cuff pass
and that Defendant Hemphill, in fact, *provided* Plaintiff with a
front-cuff pass for two weeks because of his injured shoulder.
Response at 6 (emphasis added).  Plaintiff further states that the
hospital provided Plaintiff with an arm sling, and, contrary to
Hemphill's contentions, Hemphill in fact *issued* Plaintiff a pass
for permission to use the arm sling that the hospital issued to
Plaintiff.  Response at 6-8 (citing Exh. D)(emphasis added).

On October 14, 2009, at 5:45 p.m., Plaintiff's shoulder came
out of place again and he went to the medical department
complaining of shoulder pain.  Mot. SJ at 4; Response at 8.  Doctor
Hemphill recognized that Plaintiff's shoulder was again dislocated,

received permission to send Plaintiff to an orthopedic specialist, and, within a few hours, Plaintiff was transferred to the South Florida Reception Center for treatment by the orthopedic department where Plaintiff had surgery.  Complaint at 14; Mot. SJ at 5.

**B.   Eighth Amendment- Deliberate Indifference Standard**

In the prison context, "[t]he Eighth Amendment can give rise to claims challenging specific conditions of confinement, the excessive use of force, and the deliberate indifference to a prisoner's serious medical needs."  *Thomas v. Bryant*, 614 F.3d 1288, 1303 (11th Cir. 2010)(citations omitted).  In order to state a claim for a violation under the Eighth Amendment, a plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).  This showing requires a plaintiff to satisfy an objective and a subjective inquiry.  *Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir. 2003) (citing *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000)).

A plaintiff must first show that he had an "objectively serious medical need."  *Id.*  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Id.* (citations omitted).  "The medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm."  *Id.*  Second, a plaintiff must

-8-

establish that a defendant acted with "deliberate indifference" by showing both a: (1) subjective knowledge of a risk of serious harm (i.e., both awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists and the actual drawing of the inference); and (2) disregard of that risk; and (3) conduct that is more than gross negligence. *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005). "Whether a particular defendant has subjective knowledge of the risk of serious harm is a question of fact 'subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Goebert v. Lee County*, 510 F.3d 1312, 1327 (11th Cir. 2007)(quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

When a prison official eventually provides medical care, the prison official's act of delaying the medical care for a serious medical need may constitute an act of deliberate indifference. *See McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *Harris v. Coweta County*, 21 F.3d 388, 393-394 (11th Cir. 1994); *Brown v. Hughes*, 894 F.2d 1533, 1537-39 (11th Cir. 1990). In determining whether the length of the delay violates the constitution, relevant factors for the Court to consider include the nature of the medical need and the reason for the delay. *McElligott*, 182 F.3d at 1255. The Court should consider whether the delay in providing treatment

worsened the plaintiff's medical condition, and as such "[a]n inmate who complains that delay in medical treatment [rises] to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay." *Hill v. Dekalb Regional Youth Detention Center,* 40 F.3d 1176, 1187 (11th Cir. 1994), *abrogated on other grounds Hope v. Pelzar*, 536 U.S. 730 (2002). However, the United States Supreme Court has emphasized that not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle,* 429 U.S. at 105.

### C.  Defendant Hemphill's Motion

Defendant Hemphill moves for summary judgment and submits that Plaintiff has not established that he acted with deliberate indifference to Plaintiff's serious medical need. Mot. SJ at 7-10. Defendant also argues that Plaintiff cannot sue Defendant Hemphill in his official capacity for monetary damages under Eleventh Amendment immunity. *Id.* at 11. Defendant Hemphill, in closing, argues that Plaintiff cannot recover for compensatory or punitive damages under 42 U.S.C. § 1997e(e) because he cannot demonstrate physical injury. *Id.* at 12. The Court finds that Defendant Hemphill is entitled to the entry of summary judgment, and, as such, the Court will not address Defendant's arguments involving sovereign immunity or § 1997e(e).

### 1.   Injury involving Plaintiff's Dislocated Shoulder

The evidence of record establishes that Plaintiff experienced a dislocated shoulder and the parties do not dispute this diagnosis.   The Court recognizes that a dislocated shoulder has been determined by other courts to constitute a serious medical condition.   *See Petrichko v. Kurtz*, 117 F.Supp.2d 467, 2000 WL 1478790 (E.D. Pa. Oct. 4, 2000); *Higgins v. Corr. Medical Serv. of Illinois*, 8 F.Supp.2d 821 (N.D. Ill. July 1, 1998).   The record also reveals that Doctor Hemphill recognized that Plaintiff's condition was serious.   Doctor Hemphill saw Plaintiff within one hour of the time the inmate attacked Plaintiff.   Plaintiff acknowledges that Hemphill obtained permission to send him to the hospital for treatment of his dislocated shoulder, and on that same day, Doctor Hemphill re-examined him upon his return from the hospital.   Plaintiff further acknowledges that Hemphill had previously prescribed him with pain medication, which he was taking at the time he dislocated his shoulder; that Hemphill provided him with a front-cuff pass; and, that Hemphill allowed him to keep the arm sling issued by the hospital after his shoulder was relocated. When Plaintiff's shoulder became dislocated the second time, Plaintiff acknowledges that Defendant Hemphill sent Plaintiff to an orthopedic specialist at South Florida Reception Center where he underwent surgery.

The only matters at issue in this case are the approximate three-hour delay, after Plaintiff saw Doctor Hemphill, while Plaintiff was awaiting transfer from Charlotte Correctional to the hospital.  During this time, Plaintiff states he had "inadequate" pain medication and no arm sling.  Plaintiff also takes issue with Hemphill's failure to provide sutures for the cut in Plaintiff's mouth.[1]

Because the Court has determined that Plaintiff's dislocated shoulder constituted a serious medical condition, the Court must next determine if the record contains a dispute of material fact as to whether Defendant Hemphill acted with deliberate indifference. Defendant Hemphill's statement of material facts does not specify at what time Plaintiff was transferred to the hospital.  Mot. SJ at 3.  Defendant states that Plaintiff was "immediately sent by Doctor Hemphill" to the hospital for treatment.  *Id.* at 9.  Plaintiff submits that he was sent to the hospital at 1:00 p.m., thereby reflecting an approximate three-hour delay from the time Doctor Hemphill examined Plaintiff to the time Plaintiff arrived at the hospital.  Response at 3.  Nothing in the record suggests that Doctor Hemphill was responsible for the delay Plaintiff experienced

---

[1]It is unclear whether Plaintiff's cut was "in" or "on" his mouth.  *See* Complaint at 14 (stating "deep cut in the Plaintiff's mouth); Response at 10 (stating "deep cut on the Plaintiff's upper lip.") There is nothing in the record to suggest Plaintiff had two "deep cuts."  Whether the cut was "in" or "on" Plaintiff's mouth, or whether he had two deep cuts is immaterial.

from the time when Doctor Hemphill ordered Plaintiff to the hospital and Plaintiff's arrival at the hospital.  Additionally, nothing in the record suggests that Plaintiff had to wait any period of time for treatment once he arrived at the hospital. *See* record.

Indeed, the record contains a dispute as to whether Plaintiff was immediately transferred from the jail to the hospital, or whether there was a three-hour delay.  Assuming *arguendo* that Plaintiff encountered a three-hour delay, the Court finds that the delay was minimal and likely no more of a delay than a private citizen would encounter while awaiting treatment at a hospital emergency room.  Plaintiff neither suggests, nor is there verifiable evidence that the three-hour delay in time from Doctor Hemphill's examination to Plaintiff's transport and procedure at the hospital worsened the plaintiff's medical condition. *Hill,* 40 F.3d at 1187; *McElligott*, 182 F.3d at 1255.  Likewise, Plaintiff does not claim, nor is there any verifiable evidence in the record to suggest that awaiting transport to the hospital without an arm sling caused any detrimental effect to Plaintiff's dislocated shoulder.  Instead, the record shows that Hemphill ensured that Plaintiff received appropriate medical attention and treatment. Thus, it cannot be said that Hemphill was deliberately indifferent to Plaintiff's serious medical needs.

Plaintiff also faults Defendant Hemphill for not providing "adequate" pain medication.  The record establishes that Plaintiff was previously prescribed pain medication and taking that medication at the time of his shoulder injury.  In his affidavit, Doctor Hemphill explains that he "did not issue Plaintiff pain medication because he already had a ninety day supply of Naprosyn (500 mg)."  Exh. B.  The question of whether Plaintiff required a different type of pain medication, or an increase in the amount of pain medication constitutes a difference of medical opinion and does not amount to a constitutional violation.  In this case, Defendant Doctor Hemphill's affidavit evidences that the doctor believed the pain medication Plaintiff was taking was sufficient.

### 3.  Injury involving Plaintiff's mouth

Plaintiff also takes issue with Defendant Hemphill's failure to provide sutures for the "deep cut" in his mouth, which he states caused him pain and difficulty eating.  Doctor Hemphill submits that the cut on Plaintiff's mouth was not noted in the doctor's October 12, 2009 assessment "because it was so minor."  Mot. SJ at 5.  Additionally, Defendant Hemphill explains that "the mouth has numerous veins, it is not normal practice to suture minor cuts inside a patient's mouth."  *Id.*

Based on the evidence of record, the Court finds that the cut in Plaintiff's mouth does not constitute an "objectively serious medical need."  It is neither a medical need that a physician

-14-

mandated treatment for, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  Evidently, Plaintiff's cut, which was left unattended, did not pose a substantial risk of serious harm.

Based on the aforementioned reasons, the Court finds that Defendant Hemphill is entitled to the entry of summary judgment in his favor.

ACCORDINGLY, it is hereby

**ORDERED:**

1.  Defendant Hemphill's Motion for Summary Judgment (Doc. #44) is **GRANTED**.  Defendant Hemphill is **DISMISSED with prejudice.**

2.  The Clerk of Court shall enter judgment accordingly and edit the caption of the case.

**DONE AND ORDERED** at Fort Myers, Florida, on this 27th day of January, 2011.

Charlene Edwards Honeywell
United States District Judge

SA: alj

Copies: All Parties of Record

-15-