UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LESAMUEL PALMER,

                Plaintiff,

vs.                                    Case No.  2:10-cv-98-FtM-36SPC

J. BRACY,

                Defendant.
_____

**OPINION AND ORDER**

**I.**

This matter comes before the Court upon review of the Motion for Summary Judgment filed on behalf of Defendant Bracy (Doc. #62, Motion) on February 16, 2011. Defendant submits numerous exhibits in support of his Motion (Doc #62-1), including: "use-of-force checklist" form, incident reports filed by all correctional officers involved on the date of the incident, medical documents, cannister history logs, witness statements, and a disciplinary report worksheet (Exh. A); Affidavit of Officer T. Gjerde (Exh. B), Affidavit of Defendant J. Bracy (Exh. C); Affidavit of officer M. Thomas (Exh. D), Affidavit of inmate witness Griffin (Exh. E); Declaration of inmate M. Coleman (Exh. F); and, Affidavit of Officer Whitt (Exh. G).

Plaintiff filed a Response (Doc. #88, Response) in opposition to Defendant Bracy's Motion and filed the following supporting exhibits (Doc. #88-1, #88-2, #88-3, #88-4, #88-5): charging document from Plaintiff's underlying criminal case and unrelated

inmate grievances (Doc. #88-1, Pl's Exh. A); bureau of state investigations case summary form dated June 9, 2009, pertaining to Plaintiff's fear of Officer Kraus (Doc. #88-2, Pl's Exh. B); inmate grievances submitted by Plaintiff concerning unrelated incidents involving Officer Kraus and Plaintiff's medical records from October 12, 2009 incident  (Doc. #88-3, Pl's Exh. C); "Affidavit" of Plaintiff, inmate grievance submitted by Plaintiff concerning October 12, 2009 incident at issue *sub judice*, Declaration of inmate Kevin Neal, Declaration of inmate Sylvester Jones, Declaration of inmate Willie Knight, Declaration of inmate Marquis Jenkins, Declaration of inmate Leroy Handy, Declaration of Officer Derek Snider, Declaration of former inmate Michael Horton, Declaration of inmate Leon Burroughs, Declaration of former inmate Steven Moore, Declaration of former inmate Sherman Dorsey, and, Declaration of inmate Michael Coleman  (Doc. #88-4, Pl's Exh. D); and Defendant Bracy's Responses to Plaintiff's "deposition questions" and interrogatories (Doc. #88-5, Pl's Exh. E).  This matter is ripe for review.


## II.

The Court must first address two matters concerning Plaintiff's exhibits attached to his response in opposition to the Defendant's Motion for Summary Judgment.

### A.  Motions to Sanction

At the outset, the Court notes that Defendant Bracy moves to sanction Plaintiff for altering Officer Snider's Declaration. *See* Doc. #89.  Defendant states that Plaintiff altered Officer Snider's Declaration by removing the last sentence of the officer's declaration and by adding a period at the end of the sentence with a black pen.  Indeed, a review of Officer Snider's Declaration reveals that the Declaration Plaintiff submitted to the Court is not the same as the Declaration filed by Defendant.  Defendant Bracy attaches to his motion seeking sanctions Officer Snider's complete Declaration and an Affidavit from Snider attesting that the version submitted by Plaintiff was altered.  *See* Doc. #89-1, Exhs. A-B.

Plaintiff filed a response (Doc. #92) in opposition and also filed a supporting Declaration, under penalty of perjury, stating that neither he, nor anyone else changed Officer Snider's Declaration (Doc. #93).  Plaintiff acknowledges that he had the document in his possession for approximately 7 days before he filed his response and attached Snider's Declaration.  Plaintiff submits that he does not have access to any "machinery to alter" the document.  Doc. #92 at 2.

Additionally, Defendant Bracy filed a second motion to sanction Plaintiff regarding the Declaration of inmate Michael Coleman that Plaintiff submitted in support of his Response to the

Defendants' Motion for Summary Judgment.  Doc. #94.  In support of

Defendant Bracy's second motion to sanction, he attaches a

Declaration from inmate Michael Coleman attesting that the

Declaration from Coleman that Plaintiff submitted is not his own

and is a forgery.  Doc. #94-1.

Plaintiff files a "motion to sanction defendant," which the

Court construes to be his response to Defendant Bracy's second

motion to sanction.  Doc. #95.  In support, Plaintiff files his own

Declaration (Doc. #95-1), a copy of the Declaration Plaintiff

previously submitted from inmate Coleman (Doc. #95-1), and, a copy

of the witness statement previously submitted to the Court (Doc.

#95-3).  In Response, Plaintiff submits that defense counsel is

"attempting to perpetrate a fraud on the court."  *Id.* at 1.

Plaintiff states that he was housed with inmate Coleman on wing 2

at Suwanee Correctional Institution when the two inmates discussed

the altercation.  At that time, Plaintiff states inmate Coleman

told Plaintiff that defense counsel saw Coleman about this case.

*Id*. at 1.  Plaintiff states that he will take a "telegraph test" to

prove that the "statement of Mr. Coleman is true as stated."  *Id.*;

*see also* Doc. #95-2 (attesting, under penalty of perjury, that

Coleman's Declaration is not a forgery and was signed by Mr.

Coleman).

The United States Supreme Court has recognized a court's

inherent powers to impose sanctions in response to abusive

litigation practices. *Link v. Wabash Railroad Co.*, 370 U.S. 626, 632 (1962); *see also Peer v. Lewis*, 606 F.3d 1306, 1316 (11th Cir. 2010). Honesty in representations to the Court is of utmost importance. Rule 11 of the Federal Rules of Civil Procedure "forbids lying in pleadings, motions, and other papers filed with the court[.]" *Zocaras v. Castro*, 465 F.3d 479, 484 (11th Cir. 2006), *cert. denied*, 549 U.S. 1228 (2007). Misrepresentations to the Court under Rule 11(b) are subject to sanctions pursuant to Rule 11©. Fed. R. Civ. P. 11©. *Pro se* litigants are subject to the rules of the court, including the Rules of Federal Procedure. *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir.).

Based on the parties' submissions, the record is clear that Officer Snider's Declaration was altered before Plaintiff submitted Snider's Declaration with his Response. The last sentence on Snider's Declaration, which read "[o]ne of those three instances was the occurrence in this case which resulted in inmate LeSamuel Palmer attacking inmate Michael Coleman[,]" was deleted and a period was added with a black pen. *Compare* Decl. Snider, Doc. #89-01 at 3; *with* Pl's Decl. Snider, Doc. #88-4 at 17. In response, Plaintiff simply claims he did not alter Snider's Declaration and alleges that he does not have access to "machinery" that could have altered the document. Plaintiff fails to acknowledge that the two Declarations are indeed different, nor does Plaintiff suggest who could have changed the Declaration that he admits was in his

-5-

possession for approximately 7 days before he submitted the Declaration with his Response.

The court has discretion to decide factual disputes concerning the authenticity of evidence. *Gilmer v. Colorado Institute of Art*, 12 F. App'x 892, 895 (10th Cir. 2001). The Court finds the record containing sworn statements from the parties is developed as to this issue and does not necessitate an evidentiary hearing. Plaintiff's assertion that he did not alter Snider's Declaration is incredulous because it is clear that the Declaration was altered. If Plaintiff did not alter Snider's Declaration, then someone must have altered it for him. More importantly, however, is the fact that Plaintiff submitted an altered document to this Court. Also, the only person with any motive to alter the document is Plaintiff. The last sentence of Snider's Declaration stated that Plaintiff attacked inmate Coleman, which was contrary to Plaintiff's position in this case that Defendant Bracy failed to protect Plaintiff *from* inmate Coleman. Moreover, the Court finds that Plaintiff did not require access to any "machinery" to alter the document, other than white-out and/or paper, a copying machine, and a black pen. Therefore, the Court will not consider Plaintiff's version of Officer Snider's Declaration in ruling on the Defendant's Motion for Summary Judgment and it will be stricken.

Additionally, the Court finds that Plaintiff submitted a forged document when he filed the Declaration from inmate Coleman

in support of his Response. The record demonstrates that inmate Coleman did not write the Declaration that Plaintiff submits as inmate Coleman's statement. *See* 94-1 (attesting under penalty of perjury that Coleman did not make the statement Plaintiff purports to be inmate Coleman's). The Court notes that Plaintiff appears to be careful with his wording in his response to the motion to sanction. Plaintiff does not come forth in his Response and specifically explain the details regarding how he received inmate Coleman's declaration.[1] Of significance is the fact that Plaintiff submitted a forged document to this Court. Thus, the Court will not consider Plaintiff's Declaration from inmate Coleman in ruling on the Defendant's Motion for Summary Judgment and it will be stricken.

Plaintiff's behavior has threatened the integrity of the judicial process. Litigants, even *pro se* litigants, cannot simply change another person's statement given under oath and submit it to the Court in support of his or her position. Moreover, a litigant

---

[1]The Court also expresses concern regarding *how* Plaintiff received numerous declarations from former prisoners and current prisoners incarcerated in different institutions from Plaintiff. The Department of Corrections' regulations prohibit correspondence from inmate-to-inmate and normally either the Court, or defense counsel, has to assist an incarcerated plaintiff with this type of discovery. In this case, Plaintiff never sought assistance from the Court with this discovery, nor is there any indication that defense counsel assisted Plaintiff. The Court further notes that all of the inmates' declarations are typed in the same font and have consistent grammatical errors. Defendant, however, has not challenged the authenticity of these documents. Consequently, the Court considers them to the extent relevant.

cannot be permitted to submit forged documents to the Court.  The Court is concerned that Plaintiff took the position that he did not alter Officer Snider's Declaration when it is clear that Plaintiff is the *only* person who had a vested interest in altering the document.  Plaintiff compounded this deception by submitting the forged Declaration of inmate Coleman.

Plaintiff knowingly or with reckless disregard for the truth brought false information or evidence before this Court.  Indeed, Plaintiff has engaged in bad faith litigation.  Thus, the Court finds Plaintiff's actions warrant the imposition of sanctions.  Consequently, as set forth in § 944.279(1), the Court strongly recommends that Plaintiff be subject to disciplinary procedures pursuant to the rules of the Department of Corrections.

### B.  Plaintiff's Affidavit

Next, the Court notes that Plaintiff's affidavit submitted in support of his Response in opposition to the Defendant's Motion for Summary Judgment is neither notarized, nor submitted as a declaration under the penalty of perjury.  The Court further notes that Plaintiff's affidavit is undated.  *See* Aff. of Plaintiff, Pl's Exh. D at 1-5.  An affidavit is "[a] voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths, such as a notary public."  *Life Ins. Co. of N. America v. Foster*, n. 5 (D. Ala. 2010)(citations

-8-

omitted).  The affidavit must be based on personal knowledge, set forth facts that would be admissible in evidence, and show that the affiant is competent to testify about the matter therein.  Fed. R. Civ. P. 56(e)(1).  Thus, although entitled "Affidavit of LeSamuel Palmer," the affidavit does not comport with the federal rules to be considered as evidence in this matter.  Similarly, under 28 U.S.C. § 1746, a declaration submitted "under the penalty of perjury, and dated" is admissible in lieu of a sworn affidavit on a motion for summary judgment.  However, the statute expressly requires that in order for a declaration to substitute for an affidavit, the declaration must be given under penalty of perjury and dated.  Even if the Court construes Plaintiff's "affidavit" to be a declaration, the declaration does not meet the requirements of the statute because it is not given under penalty of perjury and is undated.  *Wells v. Cramer*, 262 F. App'x 184, 2008 WL 110088 *3 (11th Cir. 2008)(stating "Federal law . . . does not provide an alternative to making a sworn statement, but requires that the statement include a handwritten averment, signed and dated, that the statement is true under the penalties of perjury.").  Thus, the Court will exclude Plaintiff's affidavit from consideration in this case.

## III.

Turning now to the facts of this matter, Plaintiff brought this action against correctional officers and the physician at

Charlotte Correctional Institution stemming from an incident that occurred on the morning of October 12, 2009, when Plaintiff claims inmate Michael Coleman attacked him during recreation at Charlotte Correctional.   Complaint at 11-12.   At this stage of the proceedings, this action remains pending only as to Defendant Bracy based on his alleged failure to protect Plaintiff from the attack.

According to the Complaint, prior to the altercation, Plaintiff asked Defendant Bracy if he could "replace [sic] the Plaintiff in another cage."  Complaint at 12.  According to the Complaint, Defendant Bracy responded to Plaintiff by asking "What are you afraid of?"  Plaintiff states that Bracy then started to laugh and walked away.  *Id.*

Plaintiff alleges that because his request was ignored, inmate Coleman had the opportunity to break the cage-like fence separating Coleman from Plaintiff, pull Plaintiff through the hole into his cage, and attack Plaintiff by punching him, kicking him, and trying to stab him with a homemade shank.  *Id.*  Additionally, Plaintiff alleges that the Defendant did not immediately respond to Plaintiff's pleas for help during the attack.  *Id.* at 13.  When correctional officers responded to the altercation after hearing other inmates in the yard yelling, Plaintiff claims he was sprayed with six cans of chemical agents.  *Id.*

As a result of the attack, Plaintiff suffered a dislocated shoulder, which later required two different medical procedures, a

laceration on his lip, other minor abrasions on his body, and the effects of chemical agents.

As relief, Plaintiff seeks a declaratory judgment, compensatory damages totaling $800,000, punitive damages totaling $300,000, and any other relief the Court deems appropriate. *Id*. at 15.

## IV.

Defendant Bracy moves for summary judgment. "Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Moton v. Cowart,* 631 F.3d 1337, 1341 (11th Cir. 2011)(internal quotations and citations omitted). *See also*, Fed. R. Civ. P. 56(c)(2). "The moving party may meet its burden to show that there are no genuine issues of material fact by demonstrating that there is a lack of evidence to support the essential elements that the non-moving party must prove at trial." *Moton*, 631 F.3d at 1341 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The standard for creating a genuine dispute of fact requires the court to "make all *reasonable* inferences in favor of the party opposing summary judgment," *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)(en banc) (emphasis added), not to make all *possible* inferences in the non-moving party's favor.

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion "bears the burden of

persuasion" and must come forward with extrinsic evidence, *i.e.*, affidavits, depositions, answers to interrogatories, and/or admissions, and "set forth specific facts showing that there is a genuine issue for trial." *Beard v. Banks*, 548 U.S. 521, 529 (2006)(citations omitted); *Celotex*, 477 U.S. at 322; *Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999). If there is a conflict in the evidence, the non-moving party's evidence is to be believed and "all justifiable inferences" must be drawn in favor of the non-moving party. *Beard*, 548 U.S. at 529 (citations omitted); *Shotz v. City of Plantation, Fl.*, 344 F.3d 1161, 1164 (11th Cir. 2003). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Cuesta v. School Bd. of Miami-Dade County*, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted). Nor are conclusory allegations based on subjective beliefs sufficient to create a genuine issue of material fact. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). In the summary judgment context, however, the Court must construe *pro*

*se* pleadings more liberally than those of a party represented by an attorney. *Loren v. Sasser*, 309 F.3d 1296, 1301 (11th Cir. 2002).

The Supreme Court made clear that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Not every injury that an inmate suffers at the hands of another inmate "translates into a constitutional liability." *Id.* at 834. Rather, a violation of the Eighth Amendment occurs when a prison official acts with deliberate indifference to a substantial risk of harm to an inmate. *Id.* at 828. "Deliberate indifference is not the same thing as negligence or carelessness." *Maldonado v. Snead*, 168 Fed. Appx. 373 (11th Cir. 2006)(citing *Ray v. Foltz*, 370 F.3d 1079, 1083 (11th Cir. 2004)). "Merely negligent failure to protect" an inmate from an attack does not give rise to a § 1983 claim. *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003).

A plaintiff must demonstrate that the defendant was aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists and that the prison official drew that inference. *Purcell v. Toombs County, GA.*, 400 F.3d 1313, 1319-20; *Carter*, 352 F.3d at 1349. In other words, to show that an official had subjective knowledge, the court is to inquire whether the defendant was aware of a "particularized threat or fear felt by [the plaintiff]." *Carter*, 352 F.3d at 1350. "An official's failure to alleviate a significant risk that he should

have perceived but did not, while no cause for commendation, cannot
. . . be condemned as the infliction of punishment" and does not
give rise to a constitutional violation. *Farmer*, 511 U.S. at 838.
Whether an official had requisite knowledge is a question of fact
that may be demonstrated by circumstantial evidence. *Id.* at 842.
Consequently, evidence of past attacks which were "long-standing,
pervasive, well-documented, or expressly noted by [ ] officials in
the past" may be sufficient to find that the official had actual
knowledge. *Id.*  However, general knowledge that a particular
inmate is a problem inmate with a well-documented history of prison
disobedience who is prone to violence is not sufficient. *Carter*,
352 F.3d at 1349. *See also McBride v. Rivers*, 170 F. App'x 648
(11th Cir. 2006).  With these precedents in mind, the Court turns
to the Defendant's Motion.

**v.**

Here, in support of his Motion for Summary Judgment, Defendant
Bracy contends that Plaintiff has not shown that Defendant Bracy
subjectively knew of a substantial risk of serious harm to the
Plaintiff, or that Defendant Bracy knowingly and recklessly
disregarded that risk by failing to take reasonable measures to
abate it. *Id.* at 6-8.  In the alternative, Defendant submits that
he is entitled to qualified immunity. *Id.* at 8-9.

In Response, Plaintiff submits that he asked Defendant Bracy
to move him, or move inmate Coleman, approximately 30 minutes

-14-

before the incident took place. Response at 5. Plaintiff
maintains that instead of moving Plaintiff, Bracy responded by
laughing, asked what is he afraid of, and walked away. *Id.*
Plaintiff submits "it is a common practice for inmates to separate
the aluminum chain link 'fence fabric' with concrete floor to
attack another inmate at Charlotte C.I."[2] Response at 3, *see also*
Pl's Exh. D at 6-25 (consisting of inmate declarations).

**VI.**

The record establishes the following undisputed facts, which
are construed in the light most favorable to Plaintiff. Before 9
a.m., on October 12, 2009, at Charlotte Correctional Institution,
the aluminum fence between Plaintiff's and inmate Coleman's
recreation cages was separated and the two inmates engaged in a
physical altercation inside inmate Coleman's cage resulting in
injuries to both inmates. Complaint at 11-13; Motion at 2;
Response at 2. Sergeant Gjerde was the officer who first spotted
the inmates fighting and responded to the scene. Response at 2.
Additional correctional officers responded to the scene of the
fight at 8:48 a.m., upon the issuance of a "body alarm," the
officers all witnessed Plaintiff on top of inmate Coleman, holding
a seven-inch shank, which was made from a piece of the aluminum

---

[2]Plaintiff attempts to confuse the issue in this case by
referencing facts raised in a different prisoner civil rights case
he has pending before this Court alleging excessive-use-of-force by
a correctional officer while the correctional officer called
Plaintiff a "baby raper." These two incidents are unrelated.

fencing.  Motion at 2 (citing Exh. A: 3-4, 10-11, 25-26, 27-28, 29-30, 41; Exh. B; Exh. C; Exh. D; Exh. E; Exh. F; Exh. G); Complaint at 12-13 (describing Plaintiff's assault on inmate Coleman). Officers Thomas, Gallagher, Whitt, and Bracy, and inmate Griffin state that Plaintiff was trying to stab inmate Coleman with the shank.  Motion at 3 (citing Exhs. A-G); Complaint at 13 (acknowledging that the two inmates "wrestled" over the knife); *see generally* Response (not disputing that Plaintiff attempted to stab inmate Coleman with the shank).  Because the two inmates would not stop fighting, the responding correctional officers used chemical agents on Plaintiff and on inmate Coleman in an attempt to stop them.  Motion at 3 (citing Exhs. A-G); Complaint at 13.  At 8:57 a.m., correctional officers handcuffed and escorted Plaintiff and inmate Coleman to the showers to clean-off the chemical agents. *Id.*  Officers then brought the inmates to the medical department for their medical examinations.  *Id.*

Before the incident transpired, the recreation yard was "relatively quiet."  Motion at 3; *see also* Aff. Bracy, Exh. C at 2. Plaintiff did not inform Defendant Bracy that inmate Coleman threatened him, that he was in fear of inmate Coleman, or that a fight was imminent.  *Id.*, Complaint at 12 (alleging Plaintiff only asked Bracy to move him to another cage); *See generally* Response. Plaintiff does not allege, nor proffer any evidence that he and inmate Coleman had a history of fighting.

The parties dispute whether Plaintiff asked to be moved to a different cage. Defendant Bracy submits that Plaintiff never asked to be moved to a different cage. Motion at 3; Aff. Bracy, Exh. C at 2. Plaintiff states that he asked several officers to move him, including Defendant Bracy, and other inmates heard. Response at 2, 5; Decl. Knight, Pl's Exh. D at 11. The parties also dispute whether it was Plaintiff, or inmate Coleman who was the attacker. *See* Motion 7 (stating Plaintiff was the attacker). Defendant submits supporting evidence consisting of incident reports written by several correctional officers on the day of the attack, Exh. A at 3-4, 10-11, 25-26, 27-28, 29-30, and inmate Griffin's statement that he witnessed Plaintiff attack Coleman, *Id.* at 41. An October 19, 2009 memo written by Lieutenant Retuer to Warden Henderson also supports this position and states that Plaintiff separated the fence to enter inmate Coleman's cage. Exh. A at 9. However, Plaintiff claims that inmate Coleman was the attacker. Complaint at 12. Plaintiff submits evidence supporting that Coleman was the attacker,[3] consisting of the declaration of inmate Marquis Jenkins, who states that he watched the fight from inside the building by looking through a window in his cell, and he saw Coleman pull

---

[3]The Court notes that Plaintiff refers to himself as a "detainee" of the Florida Department of Corrections. In 2004, Plaintiff was sentenced based on his conviction of lewd and lascivious molestation of a victim under the age of 12. *See* www.dc.state.fl.us. Plaintiff remains incarcerated on this conviction. Therefore, Plaintiff is a prisoner, not a detainee.

Plaintiff through the hole into his cage. Decl. Jenkins, Pl's Exh.
D at 13. Plaintiff also submits declarations from former and
current inmates who opine that other inmates fought in the
recreation yard at Charlotte Correctional by separating the
aluminum fencing of the cages. *See* Decl. Knight, Pl's Exh. D at
11-12; Decl. Horton, *Id.* at 18-19; Decl. Burroghs, *Id.* at 20-21,
Decl. Moore, *Id.* at 23; Decl. Dorsey, *Id.* at 24.

Nevertheless, at the summary judgment stage of the
proceedings, the Court focuses on whether the record contains any
*genuine* issues of material fact based on the relevant case law.
Based on the record evidence, the Court finds that Defendant Bracy
is entitled to the entry of judgment in his favor as a matter of
law.

The record contains no evidence that Defendant Bracy was aware
of specific facts from which an inference could be drawn that a
substantial risk of serious harm existed between Plaintiff and
inmate Coleman. Plaintiff's assertions that Defendant Bracy should
have assumed that Coleman was a risk to Plaintiff based on their
respective classifications statuses is insufficient to prove
deliberate indifferent in a failure to protect claim. *See Lavendar
v. Kearney*, 206 F. App'x 860, 863-64 (11th Cir. 2006)(affirming
grant of summary judgments to defendants because violent nature
without more specific information about a risk, does not constitute
deliberate indifference). In the Complaint, Plaintiff alleges he

asked Defendant Bracy to "replace [him] in another cage."
Complaint at 12.   Bracy maintains that Plaintiff never asked him
whether he could move to a different cage.   *A fortiori*, Bracy never
could have responded to Plaintiff's question by laughing and asking
Plaintiff "what he's [sic] afraid of?"

Giving Plaintiff the benefit, as the non-moving, party, that
he was not the "attacker" and did, in fact, ask Bracy to move him
to another cage, the record contains no evidence establishing that
Plaintiff communicated to Bracy *why* he wanted to move.   Plaintiff's
allegation that Bracy asked him why he was afraid is insufficient
to show that Bracy was aware of specific facts that a substantial
risk of serious harm existed to Plaintiff, let alone that inmate
Coleman intended to separate the fencing and attack Plaintiff. The
record contains no evidence showing that Plaintiff and Coleman had
a history of fighting, or that Plaintiff ever reported that inmate
Coleman threatened him, or that Plaintiff ever directly
communicated to Bracy that he was in fear of inmate Coleman.[4]
*Chatham v. Adcock*, 334 F. App'x 281, 293 (11th Cir. 2009)(affirming
grant of summary judgment to defendants when inmate never told
officer that he was threatened by his cellmate). Thus, the record

---

[4]In the Complaint, Plaintiff alleges that inmate Coleman is 7
foot, 3 inches tall.   Complaint at 11.   The Court takes judicial
notice of the Florida Department of Corrections website, wherein it
describes inmate Michael Coleman, #789018, as 6 foot, 8 inches
tall.

contains no facts to support that Defendant Bracy was aware that Plaintiff was in fear of inmate Coleman.

Because the record contains no evidence supporting that Bracy knew Plaintiff was in fear, the record also does not show that Bracy drew any inference that Plaintiff was at serious risk from inmate Coleman.  It is too great of an assumption for the Court to construe, or interpret, that Defendant Bracy's laughter and question "what are you afraid of?" in response to Plaintiff's purported request to be moved implies that Defendant Bracy drew an inference that Plaintiff was at serious risk from Coleman.  The record evidence establishes that the recreation yard was relatively quiet before the fight occurred.  The Court makes all reasonable inferences, not all possible inferences.  Defendant Bracy submits that he reasonably believed both inmates were safe because they were locked in separate cages; the cages had concrete floors, and were enclosed in aluminum fencing.  While Plaintiff submits evidence that there have been at least three other incidents where inmates have separated the fences in the recreation yard, the record evidence shows that Plaintiff did not tell Bracy that inmate Coleman was separating the fence between them.  Nor is there any evidence that establishes that Bracy had any reason to know that either inmate was separating the fence.  Even Plaintiff's declaration from inmate Jenkins, who was located inside the jail, and allegedly saw inmate Coleman pull Plaintiff through the hole in

the cage into his cage, does not state that he alerted prison authorities that either inmate was separating the fence. The known risk of injury must be a strong likelihood, rather than a mere possibility, before a guard's failure to act can constitute deliberate indifference. *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990)(internal citations and quotations omitted). Therefore, the record contains no evidence establishing that Bracy knew, or had any reason to know, that either inmate was separating the fence in order to reach the other inmate to cause harm. Plaintiff has not shown that a rational trier of fact would determine that Defendant Bracy was deliberately indifferent to a substantial risk of serious harm.

In the Complaint, Plaintiff claims that Defendant did not "immediately" respond to Plaintiff's pleas for help. Complaint at 13. Plaintiff, however, does not develop this allegation in the summary judgment record. The record shows that Officer Gjerde was the first officer to respond and that Defendant Bracy responded, along with other officers, after a "body alarm" was issued. Similarly, Plaintiff does not take issue with the amount of force used to stop the altercation. The record evidences that responding officers only used the minimum amount of force necessary to gain order in the recreation yard.

As a matter of law, the Court finds that the Defendant did not violate Plaintiff's Eighth Amendment rights. Because the Court

finds no constitutional violation, the Court need not address Defendant's argument that he is entitled to qualified immunity. Based on the foregoing, the Court grants the Defendant's Motion for Summary Judgment.

ACCORDINGLY, it is hereby

**ORDERED**:

1. Defendant Bracy's Motion to Sanction (Doc. #89) and Second Motion to Sanction Plaintiff (Doc. #94) are **GRANTED**. The **Clerk of Court** is directed to strike Plaintiff's Declaration of Officer Snider (Doc. #88-4 at 17) and strike the Declaration of inmate Coleman (Doc. #88-4 at 25-27).

2. Plaintiff knowingly, or with reckless disregard for the truth, brought false information or evidence before this Court. The Court strongly recommends that Plaintiff be subject to disciplinary procedures pursuant to the rules of the Department of Corrections. The Clerk shall mail a certified copy of this Order to the Warden at Florida State Prison so that disciplinary procedures pursuant to the rules of the Department of Corrections, as provided in § 944.09, Fla. Stat., may be instituted.

3. The Court construes Plaintiff's Motion to Sanction (Doc. #95) to be Plaintiff's response to Defendant's second motion to sanction. Plaintiff's Motion to Sanction is **DENIED**, as it is without merit.

4.   Defendant Bracy's Motion for Summary Judgment (Doc. #62) is **GRANTED**.   The Complaint is **dismissed with prejudice** as to Defendant Bracy.

5.   The **Clerk of Court** shall enter judgment accordingly and close this case.

6.   Defendant Hemphill's motion for reconsideration (Doc. #90) shall remain pending.

**DONE AND ORDERED** at Fort Myers, Florida, on this 9th day of September, 2011.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

SA: alj

Copies: All Parties of Record

-23-